ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
RUSSELL W. CHITTENDEN
Assistant United States Attorney
California State Bar Number: 112613
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2444
    Facsimile: (213) 894-7819
    Email: russell.chittenden@usdoj.gov

Attorneys for Defendant Kathleen Sebelius,
Secretary of Department of Health & Human Services

JS - 6

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GORDIAN MEDICAL, INC.<br><br>    Plaintiff,<br><br>    v.<br><br>KATHLEEN SEBELIUS, Secretary<br>of Health &Human Services,<br><br>    Defendant. | No. CV 10-1202 CAS (FFMx)<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br><br>TRIAL DATE: November 8, 2011<br><br>TIME: 9:30 a.m.<br><br>PLACE: Courtroom of the Honorable<br>Christina A. Snyder |

1    This action under 42 U.S.C. § 1395ff(b)(1)(a) for judicial review of a final

2    decision by Kathleen Sebelius, Secretary of Health and Human Services (the

3    "Secretary") came on regularly for  trial on November 8, 2011.  The Court makes

4    the following findings of fact and conclusions of law:

5                              **FINDINGS OF FACT**

6    **I.    STATUTORY AND REGULATORY BACKGROUND**

7           A.    The Medicare Program

8           1.    The Medicare program, established under Title XVIII of the Social

9    Security Act, 42 U.S.C. §§ 1395-1395ggg, pays for medical care provided to

10   eligible aged and disabled persons.  Part A of Medicare generally authorizes

11   payment for covered inpatient hospital care and related services, 42 U.S.C.

12   §§ 1395c to 1395i-5, 42 C.F.R. Part 409.  This case involves Part B of Medicare

13   which provides supplementary medical insurance for covered medical services,

14   such as physician services and covered medical supplies, such as durable medical

15   equipment ("DME").  42 U.S.C. §§ 1395k(a)(1), 1395m(j)(5), 1395x(s)(1), (2)(A),

16   (6), (8), & (9), 42 C.F.R. Part 410 (scope of Part B benefits).  The surgical

17   dressings at issue here are considered DME.

18          2.    The Medicare program is administered by the Centers for Medicare &

19   Medicaid Services ("CMS").  CMS acts through private fiscal agents called

20   Medicare Administrative Contractors to administer Medicare Part B.  42 U.S.C. §

21   1395u; 42 C.F.R. § 421.200.  Contractors' functions include making coverage

22   determinations in accordance with the Medicare Act, applicable regulations, the

23   Medicare Part B Supplier Manual, and other agency guidelines.  Upon receiving a

24   claim for payment, a contractor determines whether the services are medically

25   necessary and reasonable and meet other Medicare requirements and are, therefore,

26   covered.  42 U.S.C. § 1395y(a).  If these criteria are satisfied, the contractor

27   reimburses the Medicare supplier from the Medicare Trust Fund based upon an

28   assignment of benefits executed by the beneficiary.  42 U.S.C. § 1395u(b)(3)(B);

1    42 C.F.R. § 421.200.

2         3.      DME claims are administered by four regional DME Medicare

3    Administrative Contractors ("DME MACs").  42 U.S.C. §§ 1395m(a)(12),

4    1395kk-1; 42 C.F.R. §§ 421.210(b), 421.404(c)(2).  Items of DME must be

5    furnished "incident to a physician's service," or by a "supplier" that possesses both

6    a valid Medicare supplier number and DME "billing privileges."  42 U.S.C.

7    §§ 1395m(j)(1), 1395x(d); 42 C.F.R. § 424.57.  A DME supplier must submit a

8    timely electronic claim to the Medicare contractor.  42 C.F.R. §§ 424.32(d), 424.44

9         4.      Medicare Part B resembles "a private medical insurance program that

10   is subsidized in major part by the federal government."  *Schweiker v. McClure*, 456

11   U.S. 188, 190 (1982).  As with private medical insurance programs, there are

12   conditions and limitations upon the coverage of services and items.  The statute

13   and implementing regulations set forth coverage conditions (42 U.S.C. §§ 1395k,

14   1395l, 1395x(s)) and exclude certain services and items from coverage under Part

15   B.  *See also* 42 U.S.C. § 1395y(a)(2)-(16); 42 C.F.R. § 411.15(a)-(j).

16        5.      Two important coverage limitations apply to the coverage of all

17   Medicare items or services, including the services at issue in this case.  First, the

18   services rendered must be reasonable and necessary for the diagnosis or treatment

19   of illness or injury or to improve the functioning of a malformed body member.  42

20   U.S.C.§ 1395y.  Second, Medicare payment cannot be made unless the party

21   seeking payment furnishes the Secretary with the information required to

22   substantiate medical necessity.  42 U.S.C. § 1395l(e); 42 C.F.R. § 424.5(a)(6).

23        6.      Congress has given the Secretary the authority to issue regulations for

24   determining entitlement to benefits under Medicare Part B.   42 U.S.C. § 1395ff(a).

25    The Secretary has broad authority to explicate the "not reasonable and necessary"

26   coverage exclusion and other coverage provisions in case-specific adjudications

27   through generally applicable rules that may be established by notice and comment

28   rulemaking, or by means of less formal guidance.  *See Heckler v. Ringer*, 466 U.S.

1    602, 617 (1984).

2        7.    A Medicare contractor may issue a "local coverage determination"

3    ("LCD"), which is the contractor's determination as to whether a particular item or

4    service is covered within the contractor's own limited jurisdiction. *Id.*

5    § 1395ff(f)(2)(B). Absent a governing LCD, the contractor applies the "not

6    reasonable and necessary" coverage exclusion and other coverage criteria to the

7    factual circumstances of an individual claim for benefits. 68 Fed. Reg. 63692,

8    63693 (Sept. 26, 2003) (final rule). The two Medicare Appeals Council ("Appeals

9    Council") decisions appealed by Gordian each applied an LCD.

10        8.    The Part B payment for covered DME is 80 percent of the lesser of

11   the actual charge for the item or the payment amount determined by the fee

12   schedule payment methodology for DME with certain adjustments. 42 U.S.C.

13   § 1395m(a)(1). *See also id.* § 1395m(a)(2) (DME fee schedule requirements).

14        B.    The Medicare Appeals Process

15        9.    A Medicare supplier whose claim has been denied by a Medicare

16   Administrative Contractor  may present a claim through an administrative appeals

17   process. 42 U.S.C. § 1395u(b)(3)(C); 42 U.S.C. § 1395ff(b) (incorporating by

18   reference 42 U.S.C. § 405(b)); see also, 42 C.F.R. § 405.801 et seq. (describing the

19   administrative appeals process for Part B). Once the administrative process is

20   exhausted, judicial review of the Secretary's "final decision" is available as

21   provided in 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C.

22   § 1395ff(b)(1)(a)).

23        10.   Upon receipt of a claim for payment, the Medicare contractor issues a

24   notice of "initial determination" indicating whether there is coverage, and, if so,

25   the amount deemed owing. 42 U.S.C. § 1395ff(a)(1); 42 C.F.R. § 405.920. If the

26   claimant is dissatisfied with the initial determination, a "redetermination" may be

27   requested by the same contractor. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940.

28   Next, if the claimant is dissatisfied with the contractor's redetermination, a

1   "reconsideration" may be requested by a "qualified independent contractor"

2   ("QIC"). 42 U.S.C. § 1395ff(b)(1)(A) & (c); 42 C.F.R. § 405.960.

3        11.   A still dissatisfied claimant may request a hearing, "as provided in [42

4   U.S.C. §] 405(b)," before an administrative law judge ("ALJ"). 42 U.S.C.

5   § 1395ff(b)(1)(A), (E) & (d)(1); 42 C.F.R. § 405.1002. The participation of CMS

6   and/or its contractors in an ALJ hearing is allowed if they elect to do so, but not

7   required. 42 C.F.R. §§ 405.1010(a), 405.1012(a). The ALJ's decision, in turn,

8   may be reviewed by the Appeals Council of the Departmental Appeals Board. 42

9   U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100. The Appeals Council and ALJs "are

10   not bound by LCDs . . . or CMS program guidance, such as program memoranda

11   and manual instructions, but will give substantial deference to these policies if they

12   are applicable to a particular case." 42 C.F.R. § 405.1062(a).

13        12.   As pertinent here, any Appeals Council or ALJ decision "to disregard

14   such policy applies only to the specific claim being considered and does not have

15   precedential effect." *Id*. § 405.1062(b). Moreover, neither the Appeals Council

16   nor an ALJ have the authority to set aside or review an LCD in a Part B claims

17   appeal; such actions may only be taken in accordance with 42 C.F.R. Part 426. *Id.*

18   § 405.1062(c).

19        13.   The claimant may seek judicial review, "as provided in [42 U.S.C. § ]

20   405(g)," of the final agency decision of the ALJ or the Appeals Council, as

21   applicable. 42 U.S.C. § 1395ff(b)(1)(A), (E); 42 C.F.R. § 405.1136.

22        C.   The Relevant Claims

23        14.   Plaintiff Gordian Medical, Inc. ("Gordian") is a Medicare-enrolled

24   wound care supplier. Gordian primarily furnishes wound care supplies to residents

25   of long term care facilities. Gordian submitted two sets of claims to Medicare for

26   reimbursement of surgical dressings furnished to the Beneficiaries. The first claim

27   was for surgical dressings furnished from January 2007 through July 2008. The

28   second claim was for surgical dressings furnished from September 2007 through

June 2008.  The initial determinations were decided unfavorably for Gordian.

NHIC, Corp., the Medicare contractor, reviewed the claims and issued unfavorable

redeterminations.  Upon appeal, RiverTrust Solutions, the Qualified Independent

Contractor (QIC), reconsidered the claims and issued unfavorable decisions against

Gordian.  Gordian was held responsible for the non-covered charges, minus any

deductibles or coinsurance.

15.     Gordian timely requested ALJ Hearings on both sets of claims

pursuant to 42 C.F.R. § 405.1002(a).  The amounts in controversy meet the

jurisdictional requirements for hearings at the Office of Medicare Hearings and

Appeals (OMHA).

16.     The first set of claims (No. 1-425778911) was heard on July 7, 2009,

at the OMHA Midwestern Field Office in Cleveland, Ohio.  This case was a

consolidated matter involving nine hundred fifty-nine (959) separate appeals in

which payment was denied in full or in part for surgical dressings provided on

various dates in 2007 and 2008.  Michael D. Watson, AMT's Vice President of

Governmental Affairs, and Dr. Charles Gokoo, Chief Medical Officer for Gordian,

participated at the hearing telephonically.  Each was sworn according to law.

Gordian proceeded without legal representation.  Gordian received a "Partially

Favorable" decision for 48.9% of the total claims at issue in the case.

A.R.000337; 003403.

17.     The second set of claims (No. 1-431756856) was heard on July 8,

2008 at the OMHA Midwestern Field Office in Cleveland, Ohio.  This case was a

consolidated matter involving three hundred sixty-four (364) separate appeals in

which payment was denied in full or in part for surgical dressings provided on

various dates in 2007 and 2008.  Michael D. Watson, AMT's Vice President of

Governmental Affairs, and Dr. Charles Gokoo, Chief Medical Officer for Gordian,

participated at the hearing telephonically.  Each was sworn according to law.

Gordian proceeded without legal representation. Gordian received a "Partially

1  Favorable" decision for 36.4% of the total claims at issue in the case.  A.R.000337.

2      18.    In two separate decisions, M-10-191 and M-10-198,  dated June 8,

3  2010 and June 11, 2010, the Appeals Council denied Gordian's claims in both

4  administrative cases.  A.R.000003; 003135.

5      19.    On May 25, 2010, Gordian filed the instant complaint, seeking

6  judicial review of the Secretary's final decisions.

7      II.    **CONCLUSIONS OF LAW**

8      A.    Standard of Review

9      1.    Jurisdiction in this Court is pursuant to 42 U.S.C. § 1395ff(b)(1)(A),

10 which incorporates 42 U.S.C. § 405(g) and allows for judicial review of a final

11 decision of the Secretary with respect to benefits under Medicare Part B.  Under

12 the foregoing statutory framework, judicial review of the Secretary's final decision

13 must be based solely on the record.  The reviewing court may affirm, modify, or

14 reverse the final decision of the Secretary.  (*Id.*)

15     2.    Under 42 U.S.C. § 405(g), the Secretary's final decision will be

16 disturbed only if the factual findings underlying the decision are not supported by

17 substantial evidence or if the decision fails to apply the correct legal standards.

18 *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  The findings of the Secretary

19 as to any fact shall be conclusive and must be upheld if supported by substantial

20 evidence.  42 U.S.C. § 405(g); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir.

21 2001).  "Substantial evidence" is "more than a mere scintilla but less than a

22 preponderance; it is such relevant evidence as a reasonable mind might accept as

23 adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th

24 Cir. 1997).  Whether substantial evidence supports a finding is determined from the

25 record as a whole, with the court weighing both the evidence that supports and the

26 evidence that detracts from the ALJ's conclusion.  (*Id.*)  When the evidence can

27 rationally be interpreted in more than one way, the court must uphold the

28 Secretary's decision.  (*Id.*)

3.     Because an agency's action is presumed valid, the burden is upon the party challenging the agency's action to show that it is arbitrary and capricious and not upon the agency to show that the action is not arbitrary and capricious. *Diplomat Lakewood, Inc. v. Harris*, 613 F.2d 1009 (D.C. Cir. 1979); *Short Haul Survival Comm. v. United States*, 572 F.2d 240, 244 (9th Cir. 1978); *Angel v. Butz*, 487 F.2d 260, 263 (10th Cir. 1973). Deference is all the more warranted where, as here, the question of interpretation arises under a "complex and highly technical regulatory program," in which even "the identification and classification of relevant criteria necessarily require significant expertise, and entail the exercise of judgment grounded in policy concerns." *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994). Thus, as the Ninth Circuit stated in *U.S. v. Elias*, 269 F.3d 1003, 1010 (9th Cir. 2001), if an agency's interpretation "is reasonable, we must defer to the agency's interpretation, even if we would have reached a different result had we construed the statute initially."

B.     The Secretary's Decision Is Supported by Substantial Evidence

4.     The Medicare Act has provided that with respect to <u>all</u> Medicare items or services:

> Notwithstanding any other provision of this title, no payment may be made under <u>Part A or Part B</u> for any expenses incurred for items or services . . . which . . . are not <u>reasonable and necessary</u> for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. . . .

42 U.S.C. § 1395y(a)(1)(A) (emphasis added); 42 C.F.R. § 411.15(k)(1).

5.     Congress has vested final authority in the Secretary to determine what items or services are "reasonable and necessary." 42 U.S.C. § 1395ff(a) (emphasis added); *Heckler v. Ringer*, 466 U.S. 602 (1984). The Secretary has broad discretion to determine what documentation is required to establish medical necessity. *See Maximum Comfort, Inc. v. Sec'y of HHS*, 512 F.3d 1081, 1086-88 (9th Cir. 2007), *cert. denied*, 129 S.Ct. 115 (2008); *KGV Easy Leasing Corporation v. Leavitt*, 2011 WL 491010 (9th Cir. 2011).

1    6.    The Secretary is not required to follow the "treating physician rule"

2  which may give more weight to a treating physician's diagnosis in Social Security

3  disability cases.  The "treating physician rule" applies to Social Security disability

4  cases and has been specifically rejected to demonstrate medical reasonableness and

5  necessity in Medicare reimbursement cases such as this one.  *See Schisler v.*

6  *Sullivan*, 3 F.3d 564 (2d. Cir 1993).

7    7.    For each beneficiary at issue in this case, Gordian submitted in

8  support of its claims for surgical dressings (1) a Nursing Facility Patient Wound

9  Care Orders, (2) a Wound Evaluation Skin Integrity Evaluation Report, and (3) a

10  long-term care facility admission sheet, prepared upon the admission of the

11  beneficiary to the long-term care facility. The admission sheets set forth the

12  beneficiary's  admitting diagnoses which may not have been current for the

13  beneficiary at the time of the treatment orders at issue in Gordian's appeals.  For

14  example, the three admission sheets cited by Gordon are dated between three and

15  one-half months and over two years before the beneficiaries' dressings were

16  ordered.[1]  A.R.000567; 000571; 000577.

17    8.    The Medicare Appeals Council relied upon the applicable LCD,

18  L11471,[2] in reaching its decision in Case No. M-10-191.  That LCD sets forth the

19  required documentation for the surgical dressings it covers and states:

20        Current clinical information which supports the reasonableness and

21        necessity of the type and quantity of surgical dressings provided must

22        be present in the patient's medical records. . . .

23  A.R.000009.  The LCD's reference to "current clinical information" means that

24  

25    [1]  Beneficiary D.P. was admitted on 10/4/07 and the order is dated 3/7/08.

26  A.R.000563; 000567. Beneficiary E.P. was admitted on 4/12/07 and readmitted on
   11/15/07 and the order is dated 3/3/08.  A.R.000569; 000571.  Beneficiary M.N.

27  was admitted on 1/9/06 and the order is dated 1/16/08.  A.R.000575, 000577.

28

    [2]  The parties agree that the LCDs are substantially identical. P. Rply. at 4.

-8-

1   more documentation is required other than a description of the status of the wound

2   . . . at the time the dressing is ordered.

3         9.  The documentation that Gordian submitted with its claims was not

4   sufficient to support its claims for the specialized wound care supplies at issue

5   under the LCDs because it does not contain any information about the ongoing

6   healing process or the actual amount of dressings used.  *See* A.R. 003141.

7         10.    The Secretary's findings, through the Appeals Council, that Gordian's

8   claims were not covered by Medicare due to, *inter alia*, Gordian's failure to submit

9   adequate documentation to support those claims is not arbitrary, not capricious, is

10  without legal error, and is supported by substantial evidence.

11        11.    Gordian asserts that the Secretary's final decisions should be reversed

12  because they are inconsistent with "agency precedent," namely favorable coverage

13  determinations made by ALJs in seven other appeals it brought.  Initial decisions in

14  the Medicare adjudication process (e.g., contractor, qualified independent

15  contractor (QIC), or ALJ decisions) may be reviewed at subsequent administrative

16  stages.  However, this does not impose a burden upon CMS to seek further

17  administrative review when a contractor or an ALJ finds coverage simply to avoid

18  being bound by that decision in subsequent cases.  *See Community Care Found. v.*

19  *Thompson*, 318 F.3d 219, 227 (D.C. Cir. 2003)*; Almy v. Sebelius*, 749 F.Supp. 2d

20  315 (D.Md. 2010), *appeal docketed*, No. 1-2241 (4th Cir.. November 4, 2010); *c.f.*

21  *Int'l Rehabilitative Sciences, Inc. v. Sebelius*, 737 F. Supp. 2d 1281 (W.D. Wash.

22  2010), *appeal docketed*, No. 11-35254 (9th Cir. March 23, 2011).  Any allegedly

23  inconsistent contractor or ALJ decisions do not render the Appeals Council's

24  decisions arbitrary or capricious.  *Id.*

25        12.    Gordian has not established the requisite "sufficient particulars" of

26  alleged agency inconsistency.  *P.I.A. Michigan City, Inc. v. Thompson*, 292 F.3d

27  820, 826 (D.C. Cir. 2002).   In fact, four of the seven ALJ decisions Gordian

28  submitted declined to follow the applicable LCD and are therefore not precedential

by regulation. *See* 42 C.F.R. § 405.1062(b). With respect to the remaining three decisions, all three are by one ALJ who found that many of the dressings at issue "were not medically necessary" at the amount or quantity ordered. *See e.g.*, Declaration of Cori Goldberg, Ex. 4, p. 276-79; Ex. 5, p. 394-95; Ex. 6., p. 470-75. Thus, the alleged inconsistency of ALJ decisions cannot provide a basis for the reversal of the Secretary's final decisions at issue herein.

13. The Secretary's final decision in this matter is not arbitrary, not capricious, is without legal error, and is supported by substantial evidence. Therefore, the Secretary's final decision is sustained by this Court.

DATED: March 9, 2012

_Christine A. Snyde_
UNITED STATES DISTRICT JUDGE

PRESENTED BY:

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

*/s/ Russell W. Chittenden*
RUSSELL W. CHITTENDEN
Assistant United States Attorney

Attorneys for Defendant

OF COUNSEL:

MARK B. CHILDRESS
Acting General Counsel

ANNE HALL
Chief Counsel, Region IX

CLAIRE D. DECHAZAL
Assistant Regional Counsel

United States Department of
        Health and Human Services